ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| TERESA ALTAGRACIA RODRÍGUEZ<br>Recurrido<br><br>v.<br><br>MAPFRE PRAICO INSURANCE COMPANY, ESTADO LIBRE ASOCIADO DE PUERTO RICO; Y OTROS<br>Peticionario | TA2026CE00504 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Número: SJ2024CV09641 Consolidado con SJ2025CV05681<br><br>Sobre: Caída |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de mayo de 2026.

Comparece MAPFRE PRAICO Insurance Company (MAPFRE o parte peticionaria) como aseguradora del Municipio Autónomo de San Juan (Municipio) y nos solicita la revocación de la *Resolución Interlocutoria,* emitida el 16 de marzo de 2026, notificada el día 18, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro de instancia).[1] Mediante su dictamen, el foro primario declaró *No Ha Lugar* la *Moción de Sentencia Sumaria Parcial* en cuanto a MAPFRE, denegando así la desestimación solicitada.

Por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari* y revocamos el dictamen recurrido.

**I.**

El 17 de octubre de 2024, la señora Teresa Altagracia Rodríguez (señora Rodríguez o parte recurrida) presentó una *Demanda* por daños y perjuicios contra el Municipio y MAPFRE,

---

[1] Sistema Unificado de Administración y Manejo de Casos (SUMAC) TA, Entrada Núm.1, Apéndice 36.

como su aseguradora.[2] En síntesis, alegó que, el 4 de junio de 2024, mientras se encontraba caminando por la acera que discurre frente a la Calle Rosales en el Municipio de San Juan, sufrió un accidente debido a un desnivel que allí ubica, para lo cual no se ofrecía advertencia. En particular, señaló que sufrió golpes y traumas en diversas partes de su cuerpo, lo cual provocó el que se tuviera que someter a estudios y análisis, entre otros. Indicó que, ha sufrido un impedimento parcial permanente, angustias físicas, daños emocionales y mentales, además de haber sufrido pérdida económica por incurrir en gastos médicos por el tratamiento. Arguyó que, el accidente se debió única y exclusivamente a la culpa y/o negligencia de los demandados al no advertir del peligro y no proveer notificación alguna de la condición en que se encuentra el área. Sostuvo, además, que dicho accidente se debió a la negligencia del Municipio, al ser causante de los daños por tener y mantener el control del área donde ocurrió el accidente y no brindar el mantenimiento y la seguridad necesaria. En cuanto a la aseguradora, disputó que responde solidariamente, en virtud de la póliza de seguro expedida a favor del Municipio.

Superados los trámites iniciales de emplazamientos de rigor, el 9 de enero de 2025, el Municipio y MAPFRE presentaron *Contestación a Demanda*, en la cual negaron las alegaciones en su contra.[3] En particular, expusieron que el accidente se debió a la propia negligencia de la parte demandante y, potencialmente, por terceras personas por cuyas acciones y omisiones éstos no responden.

Tras varios trámites procesales que resultan innecesarios pormenorizar, la parte recurrida solicitó la consolidación del caso número SJ2025CV05681, producto de los mismos hechos, incoado

---

[2] *Íd.*, Apéndice 1.
[3] SUMAC TPI, Entrada Núm. 7.

contra el Estado Libre Asociado de Puerto Rico (ELA),[4] y así, lo autorizó el foro primario.[5]

En el referido caso contra el ELA, la señora Rodríguez adujo que, el Departamento de Transportación y Obras Públicas de Puerto Rico (DTOP), es la parte que cometió la negligencia y causó los daños, al faltar a su deber de cuidado y mantenimiento del área donde ocurrió el accidente, al no conservar la misma en buen estado y libre de peligro. Arguyó que, el ELA responde por ser el encargado del lugar donde ocurrió el accidente.[6] El ELA acreditó su alegación responsiva[7] y luego la señora Rodríguez presentó una Certificación de No Jurisdicción emitida por la Oficina de Empresas Municipales del Departamento de Desarrollo Económico y Turismo del Municipio.[8] En síntesis, la recurrida señaló que el área donde ocurrió el accidente forma parte de la curvatura de la intersección de la Avenida Juan Ponce de León, lo cual es una servidumbre de paso del DTOP.[9]

El 2 de febrero de 2026, el Municipio y MAPFRE presentaron moción en la que solicitaron al Tribunal que, ordenase al ELA descubrir la certificación de jurisdicción.[10] Ello, en vista de que

---

[4] *Íd.*, Entrada Núm. 17.
[5] SUMAC TA, Entrada Núm.1, Apéndice 20.
[6] SUMAC TPI, Entrada Núm. 1 del caso consolidado SJ2025CV05681.
[7] SUMAC TPI, Entrada Núm. 21. Cabe señalar que, el ELA presentó una *Moción de Desestimación* el 25 de agosto de 2025, la cual se declaró *No Ha Lugar* mediante *Resolución* emitida el 28 de agosto de 2025. Véase, SUMAC TPI, Entrada Núm. 7 y 12 del caso consolidado SJ2025CV05681.
[8] Véase, SUMAC TPI, Entrada Núm. 11, Anejo I, del caso consolidado SJ2025CV05681.
[9] En dicha *Certificación*, con fecha del 18 de junio de 2025, se consigna lo siguiente: "Se ha realizado una búsqueda en el archivo físico y digital de la Oficina de Bienes Inmuebles de la División Legal sobre la servidumbre de paso de la avenida Juan Ponce De León (PR-25), la cual incluye sus aceras y los radios de curvaturas de la intersección, y no se encontró evidencia de que esta avenida es del Municipio Autónomo de San Juan.

La avenida Juan Ponce de León (PR-25), la cual incluye sus aceras y sus radios de curvaturas de la intersección, son parte de una servidumbre de paso del Departamento de Transportación y Obras Públicas (DTOP) o de la Autoridad de Carreteras (ACT)… y el lugar del alegado incidente está dentro de esta servidumbre. Ver Guía de Secciones Típicas para las Carreteras del Área de Planificación del DTOP y la ACT.

Por lo que esta servidumbre de paso no es jurisdicción del Municipio Autónomo de San Juan". [...]
[10] SUMAC TPI, Entrada Núm. 24.

existía controversia sobre la titularidad del lugar donde ocurrió el accidente. Lo antes fue ordenado por el foro primario.[11]

En cumplimiento, el ELA presentó una *Certificación* del DTOP. En la misma se estableció lo siguiente:

> [D]e conformidad a la inspección ocular realizada el 18 de noviembre de 2025, [...], la parte demandante identificó como el lugar del alegado incidente la acera que está en el radio o sección curvatura de la carretera PR-25. Se certifica que la carretera PR-25, conocida como la Avenida Ponce de León, intersección con la Calle Rosales en Santurce, del Municipio de San Juan, es una carretera estatal bajo la jurisdicción, control y mantenimiento del DTOP.[12]

En vista de ello, el Municipio y MAPFRE presentaron una *Moción de Sentencia Sumaria Parcial*.[13] Se argumentó que, conforme al descubrimiento de prueba, la acera en donde ocurrió el accidente forma parte de la Avenida Ponce De León. Añadieron que, el Municipio no puede ser responsable de accidentes que ocurran en aceras o carreteras estatales, conforme a lo dispuesto en el Código Municipal, Ley Núm. 107-2020, 21 LPRA sec. 7084,[14] y lo resuelto por el Tribunal Supremo en *González Meléndez v. Municipio Autónomo de San Juan*, 212 DPR 601 (2023). En fin, solicitaron al TPI que desestimara la causa de acción en su contra.

En reacción, la señora Rodríguez presentó moción en la que solicitó al foro primario, aceptara el desistimiento parcial sin perjuicio, únicamente en favor del Municipio, continuando el pleito consolidado contra las demás partes.[15] Además, la señora Rodríguez presentó oposición a la moción de sentencia sumaria presentada por el Municipio y MAPFRE.[16] Enfatizó el hecho que al Municipio se le

---

[11] *Íd.*, Entrada Núm. 26.

[12] *Íd.*, Entrada Núm. 27, Anejo.

[13] SUMAC TA, Entrada Núm.1, Apéndice 29.

[14] En el referido artículo, *Acciones por Daños y Perjuicios No Autorizadas*, se dispone: "No estarán autorizadas las acciones contra el municipio por daños y perjuicios a la persona o la propiedad por acto u omisión de un funcionario, agente o empleado de cualquier municipio:

    (a) ...
    (b) ...

    (g) Cuando ocurran accidentes en las carreteras o aceras estatales.

[15] SUMAC TA, Entrada Núm.1, Apéndice 33.

[16] *Íd.*, Apéndice 34.

haya conferido inmunidad absoluta en carreteras estatales, no anula la responsabilidad independiente de MAPFRE bajo su póliza de seguros. Argumentó, conforme a la Ley de Travesías, Ley Núm. 49 de 1 de diciembre de 1917, 9 LPRA sec. 12 *et seq.*, y el Código de Seguros, Ley Núm. 77 de 19 de junio de 1957, 26 LPRA sec. 2004, la responsabilidad de MAPFRE es una acción directa e independiente, de la acción contra el Municipio. De modo que, solicitó al Tribunal, en el caso de declarar ha lugar la moción de sentencia sumaria, sólo desestimara la acción contra el Municipio.

Justipreciado lo anterior, el foro primario emitió una *Sentencia Parcial* en la que declaró *Ha Lugar* la solicitud de la señora Rodríguez, en cuanto al desistimiento sin perjuicio de la reclamación contra el Municipio.[17] Ahora bien, el TPI emitió *Resolución Interlocutoria* el 16 de marzo de 2026, notificada el día 18, en la que declaró *No Ha Lugar* la desestimación en cuanto a MAPFRE como aseguradora del Municipio.[18] El foro primario señaló que la responsabilidad de la aseguradora es una acción directa e independiente. Concluyó, "en ausencia de evidencia en esta etapa de que la póliza excluyera específicamente cubierta por acciones u omisiones culposas o negligentes, no procede extender la inmunidad del municipio como defensa en la acción directa contra la aseguradora."

Inconforme, MAPFRE procuró una reconsideración[19] por entender que, el concepto de inmunidad gubernamental del Código de Seguros, *supra*, se refiere a los límites de responsabilidad y no a la ausencia de causa de acción. De modo que, cuando no existe una causa de acción contra el municipio, no puede venir a responder un asegurador, ya que no se puede extender el contrato de seguros para cubrir una responsabilidad que no tiene el asegurado.

---

[17] *Íd.*, Apéndice 35.
[18] *Íd.*, Apéndice 36.
[19] *Íd.*, Apéndice 41.

Ante ese cuadro, en el mismo día, 1 de abril de 2026, el TPI emitió una *Resolución Interlocutoria*, en la que dispuso:

No ha lugar a la solicitud de reconsideración. Esta instancia reconoce como persuasivas las determinaciones del Tribunal de Apelaciones.

Sin embargo, en esta materia existe inconsistencia en las determinaciones del Tribunal de Apelaciones. A modo ilustrativo véase lo resuelto en Collazo Rivera v. Mapfre, TA2025CE00130 donde el Tribunal de Apelaciones denegó expedir el auto de *certiorari* solicitado por MAPFRE, como aseguradora del Municipio de San Juan, para revisar la Sentencia Parcial del TPI [...] que, aunque desestimó la reclamación contra el Municipio por la controversia sobre jurisdicción/mantenimiento de la acera de la PR-25 (Ave. Ponce de León), mantuvo la acción directa contra la aseguradora al concluir que la inmunidad municipal no se extiende a MAPFRE conforme al Código de Seguros [...].

En vista de ello, se reitera la determinación de esta sala.[20]

Insatisfecho, MAPFRE acude ante esta Curia y señala la comisión de los siguientes errores, a saber:

PRIMER ERROR: ERRÓ EL TPI AL DETERMINAR QUE NO PROCEDE EXTENDER LA INMUNIDAD DEL MUNICIPIO COMO DEFENSA EN LA ACCIÓN DIRECTA CONTRA LA ASEGURADORA, A PESAR DE LA CLARA AUSENCIA DE RESPONSABILIDAD LEGAL DE SU ASEGURADO.

SEGUNDO ERROR: ERRÓ EL TPI AL DETERMINAR QUE MAPFRE DEBE PERMANECER EN EL PLEITO MEDIANTE ACCIÓN DIRECTA A PESAR DE EXISTIR LA CLARA INEXISTENCIA DE UNA CAUSA DE ACCIÓN CONTRA SU ASEGURADO, APLICANDO INCORRECTAMENTE LAS DISPOSICIONES DEL CÓDIGO DE SEGUROS.

En reacción, la señora Rodríguez presentó una *Oposición a Certiorari*.[21] Asimismo, el 18 de mayo de 2026, el Gobierno de Puerto Rico, por si y en representación del DTOP (Estado), instó su *Escrito en Cumplimiento de Resolución*,[22] por lo que, con el beneficio de las posturas de las partes, procedemos a resolver.

---

[20] *Íd.*, Apéndice 42.
[21] SUMAC TA, Entrada Núm. 7.
[22] *Íd.*, Entrada Núm. 8.

**II.**

**A. *Certiorari***

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones mediante auto de *certiorari. Rivera et al. v. Arcos Dorados et al.,* supra. A diferencia del recurso de apelación, el tribunal revisor tiene la facultad de expedir el auto de *certiorari* de manera discrecional. *Torres González v. Zaragoza Meléndez,* supra.

Por su parte, la Regla 52.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita la facultad que tiene el foro apelativo intermedio para revisar las resoluciones u órdenes interlocutorias que emite el foro primario. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994 (2021). Esa regla establece que el recurso de *certiorari* solo se expedirá cuando se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo. *Torres González v. Zaragoza Meléndez,* supra.

No obstante, la citada Regla 52.1, también dispone que el tribunal apelativo, en su ejercicio discrecional y por excepción, podrá expedir un recurso de *certiorari* cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier otra situación en la que esperar a una apelación constituiría un fracaso irremediable a la justicia. *Íd.* El delimitar la revisión a instancias

específicas tiene como propósito evitar las "dilaciones innecesarias, el fraccionamiento de causas y las intervenciones a destiempo." *800 Ponce de León v. AIG,* 205 DPR 163, 191 (2020).

Por otro lado, el examen que hace este Tribunal previo a expedir un auto de *certiorari* no se da en el vacío ni en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez,* supra. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari. BPPR v. SLG Gómez-López,* 213 DPR 314 (2023). La citada regla dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en los cuales se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *Íd.* A tenor de la Regla 11(C) de nuestro Reglamento,

*supra,* cuando la citada Regla 52.1 impida expedir el auto de *certiorari,* procede denegar su expedición.

### B. Sentencia Sumaria

El mecanismo de sentencia sumaria está codificado en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36. *Conklin y otros v. Passalacqua y otros*, 2026 TSPR 18, resuelto el 24 de febrero de 2026. Este, permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales, no hay duda sobre los hechos esenciales y existe evidencia que los apoya, de manera  que, solo resta aplicar el derecho. *Negrón Castro y otros v. Soler Bernardini y otros*, 2025 TSPR 96, resuelto el 6 de octubre de 2025, 216 DPR ___ (2025). Este cauce sumario - invocable tanto por la parte reclamante como por quien se defiende de una reclamación- resulta beneficioso para el tribunal y para las partes, pues agiliza el proceso judicial mientras, simultáneamente, provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Conklin y otros v. Passalacqua y otros*, supra. *Jiménez Soto y otros v. Carolina Catering Corp. y otros*, 2025 TSPR 3, resuelto el 14 de enero de 2025, 215 DPR ___ (2025).

Bajo el crisol doctrinario, procede dictar sentencia sumaria si se desprende de las alegaciones, deposiciones, declaraciones juradas, contestaciones a interrogatorios, admisiones ofrecidas, entre otros, que no existe controversia real sustancial sobre un hecho esencial y pertinente, y siempre que el derecho aplicable así lo justifique. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y otros*, 2025 TSPR 78, resuelto el 5 de agosto de 2025, 216 DPR ___ (2025). Ahora bien, la Regla 36.6 de las Reglas de Procedimiento Civil, *supra,* permite la posposición de la adjudicación de un petitorio sumario, cuando una parte solicite finalizar el descubrimiento de prueba.

Con relación a los requisitos de forma que la parte promovente de una solicitud de sentencia sumaria debe cumplir, la Regla 36.3(a) de las Reglas de Procedimiento Civil, *supra,* establece los siguientes: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023). Si el promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

De otra parte, quien desafía una moción de sentencia sumaria, no puede descansar en las aseveraciones o negaciones consignadas en su alegación. *Íd.*; *León Torres v. Rivera Lebrón,* 204 DPR 20, 43 (2020). La Regla 36.3(c) de las Reglas de Procedimiento Civil, *supra,* obliga a dicha parte a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si procede en derecho. *León Torres v. Rivera Lebrón, supra.*

A esos efectos, el promovido deberá detallar y sustentar, con evidencia sustancial, los hechos materiales que pretende controvertir y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón, supra.* Claro está, para cada

uno de estos supuestos, deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3(d) de las Reglas de Procedimiento Civil, *supra*. Es decir, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, 2025 TSPR 1, resuelto el 7 de enero de 2025, 215 DPR ___ (2025).

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento  que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón, supra*, pág. 44.

No obstante, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros*, 213 DPR 980 (2024). Además, existen casos que no se deben resolver mediante sentencia porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.*

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este tribunal intermedio debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas, supra,* págs. 118-119. En particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, supra, pág. 679.

Conforme a lo anterior, los foros apelativos nos encontramos en igual posición que el Tribunal de Primera Instancia y utilizamos los mismos criterios para evaluar la procedencia de una sentencia. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro, supra.* Es decir, estamos llamados a revisar el expediente *de novo* y acreditar que las partes cumplieron con los requisitos de forma dispuestos en la Regla 36 de Procedimiento Civil, *supra,* y en su jurisprudencia interpretativa. *Negrón Castro y otros v. Soler Bernardini y otros, supra.* De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *Íd.*

## C. Conservación y mantenimiento de carreteras y aceras estatales

De acuerdo con la Ley de Travesías, Ley Núm. 49 de 1 de diciembre de 1917, según enmendada, 9 LPRA sec. 12 *et seq.,* el DTOP tiene a su cargo la conservación y el mantenimiento de las

carreteras estatales, conocidas como estaduales, las cuales están sometidas a la Ley para la Conservación y Policía de los Caminos Públicos de Puerto Rico, Ley Núm. 54 de 30 de mayo de 1973, según enmendada, 9 LPRA sec. 2101 *et seq.*[23] La disposición de ley antes citada dispone que, los municipios tendrán jurisdicción sobre las dos zonas urbanizadas, a ambos lados de la travesía, y podrán fijar alineaciones para la construcción de edificios y aceras conforme las ordenanzas municipales.[24]

Conforme a la casuística interpretativa del Tribunal Supremo, los municipios son responsables del mantenimiento de las aceras que colindan con vías públicas estatales que atraviesan los pueblos, por lo que tienen el deber de tomar las medidas necesarias para su conservación y así mantenerlas en buen estado a fin de prevenir daños por condiciones peligrosas. *Pérez v. Mun. de Lares*, 155 DPR 697 (2001); *Del Toro v. Gob. De la Capital*, 93 DPR 481 (1966); *Oliver v. Municipio de Bayamón*, 89 DPR 442 (1963); *Vélez v. Gobierno de La Capital*, 77 DPR 701 (1954).

No obstante, la Asamblea Legislativa consideró que las acciones en daños y perjuicios contra los municipios menoscaban los servicios y recursos municipales.[25] Por tal razón, se aprobó la Ley Núm. 143-2019, que añadió el inciso (g) al Artículo 15.005 de la

---

[23] A tenor con la Ley para la Conservación y Policía de los Caminos Públicos de Puerto Rico, *supra*, la carretera se define como:

> [C]ualquier vía pública estatal para el tránsito vehicular que haya sido construida de acuerdo a alguna Ley del Estado Libre Asociado de Puerto Rico o que, habiendo sido construida por una Agencia o Corporación Pública, Estatal o Federal o por un municipio, haya sido transferida legalmente al Departamento de Transportación y Obras Públicas para su custodia y conservación. Una carretera está integrada por la zona de rodaje, el paseo, la servidumbre de paso, así como puentes, obras de desagüe, rótulos, señales, barreras protectoras, necesarias y convenientes para el mejor tránsito de los vehículos.

[24] Art. 2 de la Ley de Travesías, *supra*.

[25] Exposición de Motivos del Proyecto del Senado 1022 por la Ley Núm. 143-2019, que enmienda la Ley de Municipios Autónomos, Ley Núm. 81-1991, 21 LPRA § 4705 (derogada 2020), para incorporar el inciso (g) del Art.15.005, a los fines de establecer que no se podrá radicar acciones civiles por daños y perjuicios a la persona o a la propiedad, contra los municipios como resultado de accidentes o acontecimientos ocurridos en carreteras o aceras propiedad del Gobierno Estatal. Cabe destacar, estas disposiciones se acogen tal cual en el Art. 1.053 del Código Municipal, *supra*, el cual derogó la Ley de Municipios Autónomos.

derogada Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81-1991, según enmendada, 21 LPRA sec. 4705.[26] En la Exposición de Motivos se expresó que, "[u]na acción de este tipo podría tener un impacto económico directo contra sus limitados recursos y su precaria situación fiscal. Por consiguiente, un incremento sostenido en las reclamaciones radicadas contra los municipios provocaría un aumento sustancial en los costos por concepto de seguros de responsabilidad pública". *Íd.* A su vez, dispone que es "[n]ecesario establecer un régimen legal justo para que los municipios no sean responsables por la alegada negligencia al Estado, en cuanto al mantenimiento de sus carreteras y aceras". *Íd.* Como vemos, tal enmienda prohibió expresamente las reclamaciones en daños y perjuicios contra los municipios por accidentes ocurridos en las carreteras o aceras estatales.

Es preciso aclarar, esta disposición se acogió en el Artículo 1.053 del Código Municipal, *supra*, sec. 7084, el cual reitera que no están autorizadas las acciones contra los municipios por daños y perjuicios por acto u omisión de un funcionario, agente o empleado municipal cuando ocurren accidentes en una carretera o acera estatal.

De ahí que, el Tribunal Supremo de Puerto Rico en *González Meléndez v. Mun. San Juan et. al., supra*, tuvo ante sí la oportunidad de determinar si los municipios responden por las reclamaciones de daños y perjuicios instadas en su contra por accidentes ocurridos en las carreteras o aceras pertenecientes al Gobierno estatal, a tenor con el inciso (g) del Art. 15.005 de la Ley de Municipios Autónomos. Tras esbozar el derecho aplicable, el Máximo Foro concluyó que dicho artículo "[n]o deja margen a otra interpretación...", siendo el factor determinante para que los municipios no respondan, la

---

[26]El objeto de la enmienda fue el inciso (g) que dispone: "Cuando ocurren accidentes en las carreteras o aceras estatales".

existencia del vínculo directo entre un accidente y el hecho de que el mismo ocurra en una carretera o acera propiedad del Estado. *Íd.* En ese caso, el Tribunal determinó que, una vez el Gobierno aceptó que la Avenida es estatal, por ende, su acera, **resulta inmaterial ventilar si el Municipio mantuvo la servidumbre de paso en condiciones razonables**. Cónsono con lo anterior, el reclamante no tiene causa de acción contra un municipio, cuando ocurren accidentes en carreteras o aceras estatales. *Íd.*

### D. Seguros

El negocio de seguros en Puerto Rico está revestido de un alto interés público. *Consejo de Titulares del Condominio Parques de Cupey y otros v. Triple-S Propiedad, Inc.*, 2025 TSPR 82, resuelto el 15 de agosto de 2025; *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 988-989 (2023); *W.M.M., P.F.M. et al.* v. *Colegio et al.*, 211 DPR 871, 884 (2023). Por esta razón, las controversias en materia de seguro serán resueltas en virtud del Código de Seguros, 26 LPRA sec. 101 *et seq.*, y su jurisprudencia interpretativa, considerando el Código Civil como fuente de derecho supletorio. *Consejo de Titulares v. Triple-S,* supra; *SLG Albert-García v. Integrand Asrn.*, 196 DPR 382, 389 (2016). En particular, el Código de Seguros, *supra,* es la ley que reglamenta las prácticas y los requisitos del negocio de seguros. El contrato de seguro es aquel acuerdo mediante el cual una persona se obliga a indemnizar a otra o a pagarle o proveerle un beneficio específico o determinable al producirse un evento incierto previsto en el mismo. Art. 1.020 del Código de Seguros, 26 LPRA sec. 102.

La persona que alega que ha sufrido daños y perjuicios causados por las acciones u omisiones culposas o negligentes de un asegurado puede orientar su causa de acción de tres formas distintas: contra el asegurador, contra el asegurado, o contra ambos. *SLG Albert-García v. Integrand Asrn.*, *supra*, pág. 393. Ante

ese cuadro, el Artículo 20.030 del Código de Seguros, *supra,* sec. 2003, dispone que "[l]a persona que sufriere los daños y perjuicios tendrá, a su opción, una acción directa contra el asegurador conforme a los términos y limitaciones de la póliza, acción que podrá ejercitar contra el asegurador solamente o contra éste y el asegurado conjuntamente". Ahora bien, esa acción reconocida queda sujeta a que la responsabilidad del asegurador no exceda a la pactada según los términos de la póliza, ni surgirá en caso de que el asegurado no haya incurrido en actos u omisiones culposas o negligentes. *Íd.*

Cónsono con lo anterior, el Artículo 20.050 del Código de Seguros, *supra*, sec. 2004, en cuanto al seguro de responsabilidad sobre entidades públicas, dispone lo siguiente:

(1) La obtención de un seguro de responsabilidad por el Estado Libre Asociado de Puerto Rico, sus dependencias o entidades, y por los municipios y otras subdivisiones políticas, no constituirá ni se estimará que constituye una renuncia de inmunidad gubernamental, si la hubiere, en la responsabilidad por actos u omisiones en que hubiera mediado culpa o negligencia por agentes o empleados públicos, excepto hasta el grado de la indemnización cobrable real y efectivamente provista por dicho seguro en cuanto a un suceso en particular. Sin embargo, no se considerará que existe tal renuncia de inmunidad en cuanto a ninguna reclamación o demanda contra tal entidad pública, a menos que dicha entidad renuncie expresamente a la inmunidad.

(2) Todas dichas pólizas de seguro deberán disponer que el asegurador no podrá aducir la defensa de inmunidad gubernamental en ninguna acción incoada contra el asegurador con arreglo a dicha póliza en virtud de la misma.

(3) [...]

En fin, aunque la aseguradora no puede ampararse en la inmunidad que cobija al municipio asegurado, según el historial legislativo de la referida ley, no procede una interpretación que pretenda imputar responsabilidad absoluta al asegurador aún en ausencia de negligencia o culpa del asegurado. Es decir, a pesar de que el asegurador no pueda invocar las defensas personales o privativas del asegurado, este no responde cuando su asegurado no

incurrió en culpa o negligencia. *SLG Albert-García v. Integrand Asrn.,* *supra,* pág. 394.

**III.**

En el caso de autos, MAPFRE plantea que el foro de instancia incidió al no desestimar la causa de acción en su contra, al determinar que no procede extender la inmunidad del Municipio como defensa en la acción directa contra la aseguradora, a pesar de la ausencia de responsabilidad legal de su asegurado. Además, en sus señalamientos de error, la parte peticionaria aduce que, ante la clara inexistencia de una causa de acción contra su asegurado, no procede que este permanezca en el pleito mediante acción directa. Asimismo, señala que el foro primario aplicó incorrectamente las disposiciones del Código de Seguros, *supra.*

Por otro lado, la señora Rodríguez sostiene que la inmunidad otorgada al Municipio no significa que este quedó relevado de ofrecer mantenimiento en la acera donde ocurrió el accidente por virtud de la Ley de Travesías, *supra.* Además, arguye que no se cumplen los criterios del Reglamento de este Tribunal de Apelaciones para intervenir con el dictamen recurrido.

Cabe señalar que, el Estado en su *Escrito* nos plantea que el foro de instancia incidió en su resolución al no realizar una determinación de los hechos controvertidos y no controvertidos, según lo dispuesto en la Regla 36 de Procedimiento Civil, *supra.* De modo que, el Estado argumenta que debido a que el foro primario no realizó determinación de hechos materiales y pertinentes que no están en controversia, ni de los cuales existe controversia sustancial, procede devolver el caso al TPI para que este emita una resolución en cumplimiento con la normativa antes citada.

Evaluados los planteamientos de las partes y los documentos obrantes en autos, por estar estrechamente relacionados, procedemos a discutir los señalamientos de error en conjunto.

En cumplimiento con el escrutinio inicial de rigor "de novo" exponemos que, un examen del expediente nos permite concluir que las partes cumplieron de forma sustancial las formalidades requeridas por la Regla 36, *supra*, y la jurisprudencia aplicable.

En atención a los planteamientos presentados por el Estado, debemos señalar, la disposición emitida por el foro de instancia no adolece de un error sustancial que impida a este Tribunal Revisor cumplimentar el mandato del Tribunal Supremo de realizar un examen *de novo* del expediente y los petitorios sumarios, para así atender las controversias de derecho. De hecho, conforme con la doctrina esbozada en *Roldán Flores v. M. Cuebas et al.*, *supra*, encontramos que los hechos materiales realmente están incontrovertidos, por lo cual procedemos a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. Veamos.

Surge del dictamen recurrido que, el TPI determinó que no existe controversia medular de hechos en cuanto a que la acera en donde ocurrió el accidente está en el radio o sección curvatura de la carretera PR-25, Avenida Ponce de León. Dispuso, la titularidad de la Avenida Ponce de León corresponde al Estado. Así pues, el foro primario no incidió al determinar que, en la causa ante su consideración, no existen controversias de hechos medulares, conforme a la *Certificación* del DTOP,[27] por lo que procede evaluar la corrección de su análisis sobre el derecho aplicable.

Con lo anterior expuesto, el TPI entendió que, conforme la Ley de Travesías, *supra*, "le corresponde al municipio el mantenimiento de estas aceras. [Añadió], [c]orresponde determinar si la inmunidad que otorga el Código Municipal a los municipios, le es extensiva a su aseguradora". Así, dispuso que resulta impertinente si el Municipio posee inmunidad contra las causas de acción por sus

---

[27] SUMAC TPI, Entrada Núm. 27, Anejo.

acciones u omisiones en la administración, mantenimiento o conservación de aceras estatales, pues la responsabilidad de la aseguradora es una acción directa e independiente, conforme a los artículos 20.030 y 20.050 del Código de Seguros, *supra*.

Luego del estudio de las normas citadas y la jurisprudencia aplicable concluimos que, el TPI incurrió en los errores señalados. De una revisión del dictamen recurrido se desprende que, el análisis que utilizó el Tribunal de Primera Instancia para justificar su decisión de denegar la desestimación de la causa de acción contra MAPFRE no es correcto.

Por un lado, el accidente ocurrió en una acera en el radio o sección curvatura de la carretera PR-25, una vía estatal con una servidumbre de paso del DTOP y del ELA. Es norma reiterada, el Artículo 1.053(g) del Código Municipal, *supra*, dispone que los municipios gozan de inmunidad frente a reclamaciones de daños y perjuicios por accidentes ocurridos en carreteras y aceras estatales.

Como precedente vinculante resaltamos que, el Tribunal Supremo en *González Meléndez v. Mun. San Juan et. al.*, *supra*, ya interpretó que, el reconocimiento de la inmunidad conferida por el artículo 1.053(g) del Código Municipal, *supra*, cuando ocurren accidentes en las carreteras o aceras estatales, se traduce en que la parte demandante "[n]o cuenta con una causa de acción en contra de éste [del Municipio]". En ese sentido, **la aseguradora sólo responde en la medida en que exista responsabilidad jurídica del asegurado**. *SLG Albert-García v. Integrand Asrn.*, *supra*. (Énfasis suplido).

En ese sentido, conforme al *Código de Seguros*, *supra*, ciertamente, la inmunidad gubernamental no le es extensiva a los municipios, refiriéndose al grado de indemnización cobrable real y efectivamente provista por dicho seguro. *López Prieto v. UPR*, 156 DPR 395 (2002). Es decir, las aseguradoras no pueden minimizar el

monto de indemnización, basados en los límites estatutarios que pudieran cobijar a sus asegurados.

Así pues, resulta forzoso concluir que la responsabilidad de la aseguradora, aunque se reconoce que pudiera invocarse en una acción directa e independiente, es inoperante cuando MAPFRE sólo vendría llamada a responder en la medida en que exista responsabilidad jurídica del asegurado. *SLG Albert-García v. Integrand Asrn.*, *supra.* Ante la inexistencia de responsabilidad del Municipio por imperativo de ley, se descarta cualquier obligación de MAPFRE a responder. La causa ante nos trata de la inexistencia de una causa de acción contra el Municipio asegurado. Dicho de otro modo, no existiendo una causa de acción ejercitable contra el Municipio, no puede venir a responder su aseguradora por lo que en derecho es inexistente. El contrato de seguros no se puede extender para cubrir una responsabilidad que no tiene el asegurado. Por tanto, erró el TPI al denegar la desestimación de la causa de acción contra MAPFRE.

A la luz de lo anterior, colegimos que, ante la inexistencia de una causa de acción en contra del Municipio, lo cual ocasiona que la MAPFRE, como su aseguradora, no tenga una reclamación por la cual responder no procede la reclamación según presentada. Añádase que, en el caso de autos, la parte demandante desistió de su reclamo en contra del Municipio por lo que resulta inoperante cualquier acción contra su aseguradora por los mismos hechos. El TPI incidió en su proceder por lo que colegimos que se cometieron los errores señalados.

**IV.**

Por los fundamentos que anteceden, revocamos la *Resolución Interlocutoria* recurrida, y en su consecuencia ordenamos la desestimación con perjuicio de la causa de acción presentada contra MAPFRE.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones